<u>Index of Exhibit 1 to Notice of Removal</u>

A.     Complaint

B.     Civil Summons to Michael P. Murphy

C.     Affidavit of Service of Process to Michael P. Murphy

# EXHIBIT 1

EXHIBIT 1

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
2022 CVS 1554

LIVETOBEHAPPY, INC., f/k/a
CAVU RESOURCES, INC.,

    Plaintiff,

v.

MICHAEL P. MURPHY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

Plaintiff, complaining of Defendant, alleges as follows:

1.    Plaintiff LivetobeHappy, Inc., f/k/a CAVU Resources, Inc. (the "Company"), is a Nevada corporation with its principal place of business in Mecklenburg County, North Carolina.

2.    Defendant Michael P. Murphy is a citizen and resident of the State of Washington and a former employee of the Company.

3.    This is an action for money damages and declaratory relief. Accordingly, this Court has subject matter jurisdiction over this matter.

4.    On or about August 24, 2021, Mr. Murphy entered into an Employment Agreement with the Company as its Chief Technology Officer. A copy is attached as Exhibit A. The Employment Agreement provides that "action against either Party relating to this Agreement shall be brought in any federal or state court of competent jurisdiction located in Charlotte, North Carolina, and the Parties hereby irrevocably submit to the exclusive jurisdiction of any such court over any such action." See Employment Agreement ¶ 9. Accordingly, this Court has personal jurisdiction over Mr. Murphy.

5. Venue is proper in this Court in that the Company maintains a place of business, and thus resides for purposes of venue, in Mecklenburg County, North Carolina.

6. All conditions precedent to bringing this action have occurred, have been satisfied, or have been waived.

7. On February 4, 2022, the Company, by written notice, terminated Mr. Murphy's employment under the Employment Agreement "for Cause" as a result of material breaches by Mr. Murphy of the Employment Agreement, which breaches cannot be cured. See Employment Agreement ¶ 4(c).

8. The Company has a contractual relationship with PostBidShip, Inc., which is a business partner and potential acquisition target of the Company. Mr. Murphy is fully aware of this contractual relationship. On multiple occasions prior to his termination, Mr. Murphy provided confidential and potentially damaging information about the Company to PostBidShip employees and corporate directors.

9. Mr. Murphy materially breached ¶ 1 of the Employment Agreement by his failing "to promote the interests of the Company" and ¶ 5(c) by his divulging "knowledge or information of any type whatsoever of a confidential nature relating to the business of the Company". The resulting damage cannot be undone, and therefore Mr. Murphy's breach cannot be cured.

### Count One – Breach of Contract

10. The allegations set forth above are re-alleged and incorporated herein by reference.

11. The Employment Agreement is a valid and enforceable contract.

12. Mr. Murphy has breached the Employment Agreement by the conduct described above.

13. Among other relief, Mr. Murphy is obliged to return to the company the $70,000

2

signing bonus paid to him pursuant to ¶ 3(a) of the Employment Agreement because he was terminated "for Cause" prior to March 31, 2022.

14.    The Company further believes it has been proximately damaged by the foregoing conduct in an amount in excess of $25,000.00.

## Count Two – Declaratory Relief

15.    The allegations set forth above are re-alleged and incorporated herein by reference.

16.    The Company anticipates that Mr. Murphy will dispute that the reasons given for his termination constitute "Cause" under the Employment Agreement and, as such, the parties have an actual, justiciable controversy as to the rights and obligation of each under the Employment Agreement.

17.    The Company seeks a declaration that the reasons given for Mr. Murphy's termination, if proved, constitute "Cause" for his termination under the Employment Agreement.

## Count Three – Intentional Interference with Contract and Business Relations

18.    The allegations set forth above are re-alleged and incorporated herein by reference.

19.    Mr. Murphy has interfered with the Company's relationship with PostBidShip with whom it has a contractual relationship.

20.    Mr. Murphy did so without justification and with knowledge of the PostBidShip contract and business relationship.

21.    Mr. Murphy has attempted to intentionally procure a breach of the Company's contract with PostBidShip.

22.    Mr. Murphy's conduct in doing so was willful and malicious.

23.    The Company believes it has been proximately damaged by the foregoing conduct in an amount in excess of $25,000.00.

3

WHEREFORE, the Company prays the Court for the following relief:

(a)     that the Court enter judgment in favor of the Company and against Defendant for actual damages in an amount to be proven at trial, but not less than $25,000.00;

(b)     that the Court enter judgment in favor of the Company and against Defendant for punitive damages;

(c)     that the Court declare that the reasons given for Mr. Murphy's termination constitute "Cause" for his termination under the Employment Agreement;

(d)     that the Court award prejudgment and post-judgment interest on the damages awarded;

(e)     that the costs of this action be taxed against Defendant;

(f)     that all matters herein so triable be tried by a jury; and

(g)     that the Court order such other and further relief as it deems just and proper.

This the 4th day of February 2022.

Frederick M. Thurman, Jr.
N.C. Bar No. 26159
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, NC  28280
(704) 375-0057
fthurman@shumaker.com
*Attorneys for Plaintiff*

4

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "**Agreement**") is made and entered into as of the [24] day of [AUGUST], 2021 (the "**Effective Date**"), by and between CAVU Resources, Inc., a Nevada Corporation (the "**Company**"), and Michael H. Murphy ("**Employee**"). The Company and Employee are each sometimes referred to herein as a "**Party**" and, collectively, as the "**Parties**." This Agreement is contingent upon Company's finalization of its option agreement with Post.Bid.Ship, Inc.

## RECITAL

The Company desires to retain the services of Employee, and Employee desires to be employed by the Company, upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, the Parties hereby agree as follows:

1.      **Employment.** The Company hereby employs Employee, and Employee hereby agrees to serve as an employee of the Company, on the terms and conditions described herein. Employee shall serve in the capacity Chief Technology Officer of the Company. In addition to executing the duties of the Chief Technology Officer, Employee shall also be responsible for the Technology business unit of the Company. The Post.Bid.Ship business operations will be assigned under the Technology business unit if the Post.Bid.Ship business is acquired by Company. Employee also agrees to perform such services as shall from time to time be assigned to Employee by the Chief Executive Officer, the President or the Board of Directors. Company agrees that the Chief Technology Officer will report directly to the Chief Executive Officer throughout the term of Employee's employment. Employee agrees to use Employee's best efforts to promote the interests of the Company and to devote Employee's full time and attention to the business and affairs of the Company.

2.      **Term of Employment.** The employment of Employee with the Company under this Agreement shall be for the period commencing on the Effective Date and ending three years after the Effective Date (the "**Term of Employment**"), unless earlier terminated (a) upon the death of Employee, (b) at the option of the Company upon 30 days' prior written notice to Employee, in the event of the material inability of Employee to perform Employee's duties hereunder, whether by reason of injury (physical or mental), illness or otherwise, incapacitating Employee for a continuous period exceeding 120 days during any 12-month period days, (c) upon the discharge of Employee by the Company for Cause (as defined below), (d) upon the voluntary termination by Employee other than for Good Reason, or (e) upon the discharge of Employee by the Company without Cause, subject to the severance payment described in Section 4(b).

3.      **Compensation.**

(a)     **Signing Bonus.** Employee shall receive $70,000 in cash (the "**Signing Bonus**") at the earliest of the following dates: the date when Company exercises its option to acquire PostBidShip as part of Company's larger financial raise or by October 15, 2021. Employee shall repay the Signing Bonus if, prior to March 31, 2022, Employee terminates



EXHIBIT
A

his employment without Good Reason (as defined below) or the Company terminates Employee's employment for Cause (as defined below).

(b)     **Base Salary.** For all services to be performed by Employee hereunder, the Company shall pay to Employee an annual base salary of $247,000.

(c)     **Options.** The Employee shall receive, pursuant to the Company Employee Stock Option Plan as approved by the Company's Board of Directors, options equal to an undiluted .75% of the Company with a strike price set at the time the Company closes on the Option Agreement with PostBidShip, Inc.

(d)     **Benefit Plans.** Employee shall be eligible to participate in the employee benefits offered by the Company to its eligible employees, in accordance with the then existing policies and procedures of the Company relating to employee benefits.

(e)     **Vacations and Holidays.** Employee shall be eligible for all recognized Company holidays and shall accrue 3 weeks of vacation per calendar year during the Term of Employment. After the Term of Employment, employee shall be eligible for 4 weeks of vacation per calendar year while Employee remains employed by the Company. Vacation time shall accrue and be used in accordance with the Company's then existing policy. Unused vacation time in excess of one (1) week (five days) shall not carry over or be subject to compensation. Upon Effective Date, Employee shall accrue credit for existing vacation accrued under former employer, up to the 3 weeks permitted under this Agreement. Any accrued, unused vacation of Employee shall be paid to Employee upon termination of employment unless the termination is for Cause.

(f)     **Timing of Payments and Deductions.** Salary payments to Employee shall be in appropriate installments to conform with the Company's regular payroll dates. All compensation to Employee shall be subject to normal deductions therefrom, including federal and state taxes, social security and other withholding items. All payments, eligibility for benefits and similar items referred to in this Section 3 shall begin to accrue on the Effective Date.

(g)     **Work Location and Relocation.** Employee currently resides in Seattle, Washington. Employee shall retain the option to work remotely from a location of his choice provided it is within the contiguous United States. Employee shall travel to the Company's offices as required by the Company. Should Employee decide to relocate to Company's offices in either Tulsa, Oklahoma or Charlotte, North Carolina, the Company shall cover the reasonable expense associated with said relocation including but not limited to residential rental accommodation and rental car for up to sixty days, provided that such amount shall be capped at $42,000.

4.     **Termination and Obligations of the Company upon Termination.**

(a)     Employee's employment hereunder is "at will" and, therefore, either Employee or the Company may terminate the employment relationship at any time, for any reason or no reason, with or without notice, subject Section 2 and this Section 4. Upon the termination of Employee's employment with the Company, the Company shall pay to

2

Employee any earned but unpaid annual base salary during the Term of Employment through the date of such termination and any accrued but unused vacation pay, and the Company shall have no further obligations to Employee except to the extent otherwise provided in this Section 4. The rights of Employee upon termination under any benefit plans shall be in accordance with the terms of such plans, provided that, if Employee voluntarily terminates Employee's employment with the Company or if such employment is terminated by the Company for Cause, such rights shall terminate immediately to the extent permitted by law.

(b)    Upon termination without Cause of Employee's employment at any time during the Term of Employment, Employee shall be eligible to receive (so long as Employee is not in breach of this Agreement) an amount equal to 6 months of base salary ("**Severance Pay**"), provided that Employee executes and does not revoke a release of claims as designated by the Company, and provided further that no such payment shall be due if termination is due to any of the reasons set forth in Section 2(a) through 2(d). Such Severance Pay shall be paid in installments at the regular payroll date of the Company over a period of the same number of weeks of prorated annual base salary used to determine the amount of the severance payment.

(c)    This Agreement and Employee's employment may be immediately terminated by the Company at any time for Cause, upon written notice to Employee. If Employee is terminated for Cause, Employee shall not be eligible to receive any Severance Pay, compensation or other benefits for any period after the date of termination. For purposes of this Agreement, the term "**Cause**" shall mean with respect to Employee: (i) gross neglect, fraud, embezzlement, or willful refusal to perform stated duties, (ii) violation of material Company policies (including without limitation those governing drug and alcohol use and testing), (iii) willful misconduct or breach of fiduciary duty involving personal profit, (iv) any action constituting felonious criminal activity, (v) or material breach of any provision of this Agreement. In the event of items (i), (iii) or (v), Employee shall be given written notice of the Cause and shall have a reasonable time not to exceed thirty days to cure such Cause.

(d)    Employee may terminate his employment hereunder without liability to the Company for Good Reason. For purposes of this Agreement, the term "Good Reason" shall mean only the following: (1) Employee's work location described in Section 3(g) is changed by the Company without Employee's consent; (2) Employee's job title of Chief Technology Officer is changed by the Company without Employee's consent; (3) Employee's direct reporting to the Chief Executive Officer is changed by the Company without Employee's consent; (4) Employee has incurred a substantial reduction in his authority or responsibilities; (5) Employee's Base Salary (other than as required by applicable law) has been reduced, unless the reduction is 10% or less of Base Salary and is part of a general reduction in the compensation of the Company's Executive Employees; or (6) any material breach of this Agreement by the Company with written notice from Employee to the Company within twenty (20) business days of such breach, specifying in detail the breach by the Company, if such material breach is not cured by the Company within fifteen (15) business days of the Company's receipt of such written notice from Employee. In the event of termination by Employee for Good Reason, Employee shall be

3

entitled to: (i) compensation of Employee's Base Salary through the effective termination date together with accrued and unused vacation pay, and (ii) severance payment in a lump sum equivalent to six months of Base Salary in effect as of the termination date. Receipt of any payments described herein is conditioned upon Employee's execution of a general release of claims in a form acceptable to the Company and the expiration of any revocation period set forth in such general release or required by applicable law.

5. **Noncompetition; Intellectual Property; Confidentiality; Diversion of Employees or Customers; Nondisparagement**.

(a) Noncompetition. Employee agrees that Employee will not, directly or indirectly, during the Term of Employment and, in consideration of the payments provided for herein, during the period of 12 months immediately following the voluntary or involuntary termination of Employee's employment with the Company, or the period ending 12 months after the date of the Effective Date, whichever is later (collectively, the "**Restricted Period**"), engage or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend Employee's name or any similar name to, or render services or advice to, any business whose services, products or activities compete in whole or in part in any location with the services, products or activities of the Company; provided, however, that Employee may purchase or otherwise acquire up to one percent (1%) or less of the equity securities of any business, which securities are listed on any national securities exchange as long as Employee has no other business relationship, direct or indirect, with the issuer of such securities.

(b) Intellectual Property. During Employee's employment with the Company, Employee shall disclose to the Company all ideas, products, inventions and business plans developed by Employee during such period which arise in connection with the services to be provided pursuant to this Agreement, and which relate to the business of the Company or its affiliates, including without limitation any process, operation, product or improvement which may be patentable or copyrightable. Employee agrees that such ideas, products, inventions and business plans will be the property of the Company and that Employee will at the Company's request and cost do whatever is necessary to secure the rights thereto by patent, copyright or otherwise to the Company.

(c) Confidentiality. Employee agrees that Employee will not divulge to anyone (other than the Company or any persons employed or designated by the Company) any knowledge or information of any type whatsoever of a confidential nature relating to the business of the Company or any of its affiliates, including without limitation all types of trade secrets (unless readily ascertainable from public or published information or trade sources). Employee further agrees not to at any time disclose, publish or make use of any such knowledge or information of a confidential nature without the prior written consent of the Company.

(d) Diversion of Employees or Customers. During the Restricted Period, Employee shall not in any manner, directly or indirectly:

4

(i) Solicit the sale of goods, services or a combination of goods and services from those persons and entities that are the established customers of the Company;

(ii) Interfere with the relationships or agreements between the Company and those persons and entities that are established customers of the Company;

(iii) Solicit, encourage or induce, or attempt to solicit, encourage or induce, any person who is an employee of the Company to quit or leave the employment of the Company; or

(iv) Solicit, encourage or induce, or attempt to solicit, encourage or induce, any person or entity who is a contractor or vendor of the Company to modify or terminate its relationship with the Company.

Employee acknowledges that the Company has a protectable business interest in its relationships with its established customers, employees and contractors, all of which have been developed by the Company at considerable effort and expense. Prohibited activities shall include (y) encouraging or inducing modification or termination of relationships or agreements with the Company or its divisions or affiliated companies, or (z) providing goods or services or a combination of goods and services to established customers of the Company, after engaging in any of the prohibited activities set forth in clause (y) above.

(e) <u>Nondisparagement</u>. The Parties agree that they each will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning another Party, and with respect of the Company, its businesses or affiliates, or any of their owners, directors, managers, officers, employees and agents, or any of their existing or prospective customers, suppliers, investors or other associated third parties, now or in the future.

(f) <u>Remedies</u>. If Employee breaches, or threatens to commit a breach of, any of the provisions of this Section 5, the Company shall have the right and remedy to have such provision specifically enforced by any court having jurisdiction, it being acknowledged and agreed by Employee that any such breach or threatened breach may cause irreparable injury to the Company and that money damages may not provide an adequate remedy to the Company. The foregoing right and remedy shall be independent of, in addition to, and not in lieu of, any other rights and remedies available to the Company under law or in equity.

(g) <u>Severability</u>. Employee acknowledges that the restrictions contained in this Section 5 are reasonable and necessary to protect the legitimate interests of the Company and constitute a material inducement to the Company to enter into this Agreement and consummate the transactions contemplated by this Agreement. In the event that any covenant contained in this Section 5 should ever be adjudicated to exceed the time, geographic, product or service or other limitations permitted by applicable law in any jurisdiction, then any court is expressly empowered to reform such covenant, and such covenant shall be deemed reformed, in such jurisdiction to the maximum time, geographic,

5

product or service or other limitations permitted by applicable law. The covenants contained in this Section 5 and each provision hereof are severable and distinct covenants and provisions. The invalidity or unenforceability of any such covenant or provision as written shall not invalidate or render unenforceable the remaining covenants or provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such covenant or provision in any other jurisdiction.

(h)    Binding Nature. The provisions of this Section 5 shall be binding on Employee as long as Employee remains employed by the Company (including following the end of the Term of Employment) and for the period thereafter specified above.

6.    **No Conflicts**. Employee represents and warrants that Employee has no obligations inconsistent herewith and that the execution and performance of this Agreement by Employee will not constitute a breach of any other agreement by which Employee is bound.

7.    **Code Section 409A**.

(a)    **Compliance**. The Parties intend this Agreement to comply with the requirements of Section 409A of the Internal Revenue Code of 1986, as amended (the "**Code**"), and the Department of Treasury Regulations and other interpretive guidance issued thereunder ("**Section 409A**") or to be excepted from Section 409A, as the case may be.

(b)    **Certain Payments Due on a Termination of Employment**. Notwithstanding anything in the Agreement to the contrary, the payment (or commencement of a series of payments) under the Agreement of any nonqualified deferred compensation (within the meaning of Section 409A) upon a termination of employment shall be delayed until such time as Employee has also undergone a "separation from service" as defined in Treas. Reg. § 1.409A-1(h), at which time such nonqualified deferred compensation (calculated as of the date of Employee's termination of employment under this Agreement) shall be paid (or commence to be paid) to Employee on the schedule set forth in this Agreement as if Employee had undergone such termination of employment (under the same circumstances) on the date of Employee's ultimate "separation from service."

(c)    **Payments in Installments**. To the extent that the Agreement provides for any payments of nonqualified deferred compensation (within the meaning of Section 409A) to be made in installments (including without limitation any severance payments), each such installment shall be deemed to be a separate and distinct payment for purposes of Section 409A.

(d)    **Delay of Certain Payments for Specified Employees**. Notwithstanding anything herein to the contrary, if Employee is deemed at the time of Employee's separation from service to be a "specified employee" for purposes of Section 409A(a)(2)(B)(i) of the Code, to the extent delayed commencement of any portion of the termination benefits to which Employee is entitled under this Agreement (after taking into account all exclusions applicable to such termination benefits under Section 409A,

6

including, without limitation, exclusions for separate installment payments and exclusions under Section 1.409A-1(b)(9)(iii) of the Department of Treasury Regulations) is required in order to avoid a prohibited distribution under Section 409A(a)(2)(B)(i) of the Code, any such payment of nonqualified deferred compensation (within the meaning of Section 409A) that is otherwise required to be made under the Agreement to Employee upon Employee's separation from service shall be delayed for such period of time as may be necessary to meet the requirements of Section 409A(a)(2)(B)(i) of the Code (the "**Delay Period**"). On the first business day following the expiration of the Delay Period, Employee shall be paid, in a single cash lump sum, an amount equal to the aggregate amount of all payments delayed pursuant to the preceding sentence, and any remaining payments not so delayed shall continue to be paid pursuant to the payment schedule set forth herein.

(e)     **Further Changes for Section 409A Compliance**.  Notwithstanding any provision of the Agreement to the contrary, in the event that the Company determines that any amounts payable pursuant to this Agreement will be immediately taxable to Employee under Section 409A, the Company reserves the right (without any obligation to do so or to indemnify Employee for failure to do so) to (i) adopt such amendments to this Agreement and appropriate policies and procedures, including amendments and policies with retroactive effect, the Company determines to be necessary or appropriate to preserve the intended tax treatment of the benefits provided by this Agreement, to preserve the economic benefits of this Agreement and to avoid less favorable accounting or tax consequences for the Company and/or (ii) take such other actions as the Company determines to be necessary or appropriate to exempt the amounts payable hereunder from Section 409A or to comply with the requirements of Section 409A and thereby avoid the imposition of taxes or penalties on Employee under Section 409A. In no event whatsoever shall the Company or any of its affiliates be liable for any additional tax, interest, or penalties that may be imposed on Employee by Section 409A or any damages for failing to comply with Section 409A, other than for withholding obligations or other obligations applicable to employers, if any, under Section 409A.

8.     **Code Section 280G**.  If Section 280G of the Code should apply to any amounts payable pursuant to this Agreement, and if Employee is a Disqualified Individual and any amounts payable to Employee include an Excess Parachute Payment, taking into account payments under this Agreement and otherwise, the amounts payable shall be reduced to the maximum amount that does not include an Excess Parachute Payment. The terms "**Disqualified Individual**" and "**Excess Parachute Payment**" shall have the same meanings as under Code Section 280G.

9.     **Governing Law; Venue**.  This Agreement shall be governed by and construed in accordance with the substantive law of the State of North Carolina without giving effect to the principles of conflicts of law thereof and action against either Party relating to this Agreement shall be brought in any federal or state court of competent jurisdiction located in Charlotte, North Carolina, and the Parties hereby irrevocably submit to the exclusive jurisdiction of any such court over any such action.

10.     **Attorneys' Fees**.  In the event of any suit or proceeding brought to enforce any of the provisions of this Agreement, each Party will be responsible, to the extent allowed by law, for its respective attorneys' fees.

7

11. **Notices**. All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient, or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective Parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 11):

If to the Company:

CAVU Resources, Inc.
2448 E. 81st Street, Suite 4817
Tulsa, Oklahoma 74137
Attention: Chief Executive Officer
Email: kevin.cox@ltbh.com

With a copy (which shall not constitute notice) to:

Conner & Winters, LLP
4100 First Place Tower
15 East 5th Street
Tulsa, OK 74103
Attention: Jason B. Coutant and Christopher R. Wilson
Email: jcoutant@cwlaw.com and cwilson@cwlaw.com

If to Employee:

2510 29th Avenue West
Seattle, WA 98199
Attention: Michael H. Murphy
Email: murphymhm@gmail.com

With a copy (which shall not constitute notice) to:

Stokes Lawrence, PS
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101-2393
Attention: Kelby D. Fletcher
Email: kelby.fletcher@stokeslaw.com

12. **Amendment**. This Agreement may be amended by the Parties at any time only by a written instrument signed on behalf of each of the Parties.

13. **Waivers**. A Party may, to the extent legally allowed, (a) extend the time for the performance of any of the obligations or other acts of the other Party, (b) waive any inaccuracies

8

in the representations and warranties contained herein or in any document delivered pursuant hereto, and (c) waive performance of any of the covenants or agreements, or satisfaction of any of the conditions, contained herein. Any agreement on the part of a Party to any such extension or waiver shall be valid only if set forth in a written instrument signed on behalf of such Party. Except as provided in this Agreement, no action taken pursuant to this Agreement, including any investigation by or on behalf of a Party, shall be deemed to constitute a waiver by the Party taking such action of compliance with any representations, warranties, covenants or agreements contained in this Agreement. The waiver by a Party of a breach of any provision hereof shall not operate or be construed as a waiver of any prior or subsequent breach of the same or any other provisions hereof.

14. **Assignment.** Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Party; provided, however, that the Company shall have the right, without Employee's consent, to assign its rights and obligations hereunder to one of the Company's aaffiliates. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by the Parties and their respective successors and assigns.

15. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties, and supersedes any prior understandings, agreements, arrangements and representations between the Parties, written or oral, to the extent they related in any way to the subject matter hereof.

16. **Headings.** The headings of the various sections of this Agreement are solely for the purpose of convenience and shall not be relied upon in construing any provision hereof.

17. **Counterparts.** This Agreement may be executed in multiple counterparts (including execution by facsimile or scanned email signature), each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

*[Signatures appear on following page.]*

9

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by as of
the Effective Date.

"Company"

CAVU RESOURCES, INC.

By: _____

Name: _____Kevin V. Cox_____

Title: _____CEO_____

"Employee"

_____

Michael H. Murphy

# STATE OF NORTH CAROLINA

__MECKLENBURG__ County

File No.
2022-CVS- 1884

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name of Plaintiff*<br>LIVETOBEHAPPY, INC., f/k/a ) CAVU RESOURCES, INC.<br><br>*Address*<br>c/o Shumaker Loop & Kendrick, 101 S. Tryon St., Suite 2200<br><br>*City, State, Zip*<br>Charlotte, NC 28280 | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**<br><br>G.S. 1A-1, Rules 3 and 4 |
| **VERSUS** | |
| *Name Of Defendant(s)*<br>MICHAEL P. MURPHY | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| | |
|---|---|
| *Name And Address Of Defendant 1*<br>MICHAEL P. MURPHY<br>2510 29th Avenue West<br>Seattle, WA 98199 | *Name And Address Of Defendant 2* |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | | |
|---|---|---|
| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Frederick M. Thurman, Jr., Esq.<br>Shumaker Loop & Kendrick, LLP<br>101 South Tryon Street, Suite 2200<br>Charlotte, NC 28280 | *Date Issued*<br>2.4.22 | *Time*<br>3:40  ☐ AM ☒ PM |
| | *Signature* | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| | | |
|---|---|---|
| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22-CVS-1884

LIVETOBEHAPPY, INC., f/k/a
CAVU RESOURCES, INC.,

    Plaintiff,

v.

MICHAEL P. MURPHY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

**AFFIDAVIT OF SERVICE
VIA FEDERAL EXPRESS**

The undersigned, being first duly sworn, deposes and says that:

1. On February 7, 2022, pursuant to Rule 4 of the North Carolina Rules of Civil Procedure, copies of the *Civil Summons* and *Complaint* were deposited via Federal Express addressed to Defendant Michael P. Murphy as follows:

> Michael P. Murphy
> 2510 29th Avenue West
> Seattle, WA 98199

2. Such copies of the *Civil Summons* and *Complaint* were in fact received as addressed on February 9, 2022, by Defendant Michael P. Murphy. The foregoing is evidenced by the attached Federal Express Proof of Delivery marked as **Exhibit A**.

3. Pursuant to Rule 4 of the North Carolina Rules of Civil Procedure, Defendant **Michael P. Murphy** has been duly served with the *Civil Summons* and *Complaint* herein.

1

This the __10th__ day of February, 2022.

Frederick M. Thurman, Jr., NC Bar No.: 26159
Shumaker Loop & Kendrick, LLP
101 S. Tryon Street, Suite 2200
Charlotte, NC  28280
Telephone: 704-375-0057
Facsimile: 704-332-1197
E-Mail: fthurman@shumaker.com
*Attorneys for Plainitff*

SWORN TO AND SUBSCRIBED before me
this the __10th__ day of February, 2022.

Lauren E. Griffin, Notary Public
My Commission Expires: 01/10/2026

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **AFFIDAVIT OF SERVICE VIA FEDERAL**

**EXPRESS** was deposited in the United States Mail, postage prepaid, and addressed as follows:

Michael P. Murphy
2510 29th Avenue West
Seattle, WA 98199

This the _____10 th_____ day of February, 2022.

Frederick M. Thurman, Jr.
Shumaker, Loop & Kendrick, LLP

# EXHIBIT A



February 10, 2022

Dear Customer,

The following is the proof-of-delivery for tracking number: 775971038134

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | M.MURPHY | Delivery Location: | 2510 29TH AVE W |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday; Residential Delivery; Adult Signature Required | | SEATTLE, WA, 98199 |
| | | Delivery date: | Feb 9, 2022 11:40 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 775971038134 | Ship Date: | Feb 7, 2022 |
| | | Weight: | 0.5 LB/0.23 KG |

Recipient:
Michael P. Murphy,
2510 29th Avenue West
SEATTLE, WA, US, 98199

Shipper:
Lauren Griffin, Shumaker, Loop, & Kendrick LLC
101 South Tryon Street
Suite 2200
Charlotte, NC, US, 28280

Reference          261461



Thank you for choosing FedEx